# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM BASEMORE,     )
            )  Civil Action No. 13 – 669
       Plaintiff,  )
            )  District Judge Nora Barry Fischer
       v.    )  Chief Magistrate Judge Lisa Pupo Lenihan
            )
IRMA VIHLIDAL, *et al.*,    )
            )  ECF Nos. 28, 31, 39, 60
       Defendants.  )


## REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

  For the reasons stated herein, it is respectfully recommended that the Court grant the pending Motions to Dismiss filed at ECF Nos. 28, 31 and 39. Although unnecessary if Defendants' Motions to Dismiss are granted, it is further recommended that the Court grant Plaintiff's Motion for Transcripts filed at ECF No. 60, and allow Plaintiff to obtain a transcript of the hearing held before the undersigned on November 18, 2013. However, Plaintiff should be required to pay for the cost of the transcript in accordance with the fees of this Court.

## II.  REPORT

  Plaintiff William Basemore ("Plaintiff") is an inmate in the custody of the Pennsylvania Department of Corrections and currently incarcerated at the State Correctional Institution at Greene (SCI-Greene). He initiated this *pro se* prisoner civil rights suit on May 13, 2013, alleging numerous violations of his constitutional rights arising out of injuries he sustained while employed as a maintenance worker in the prison and his medical care and housing

accommodations thereafter. Defendants include various employees of the Department of Corrections ("DOC") and several health care providers at SCI-Greene. The DOC Defendants include: Irma Vihlidal (Correctional Health Care Administrator); Louis Folino (SCI-Greene Superintendent); Denise Hilberting (Registered Nurse); John McAnany (Registered Nurse Supervisor); Nedra Rice-Grego (Registered Nurse Supervisor); John Wetzel (Secretary of the PA DOC); Paul Palya (Unit Manager); Marie Balesterie (Counselor); T. McNair (Unit Manager); and Dorina Varner (Chief Grievance Officer). The Medical Defendants include: Dr. Jin (SCI-Greene Medical Director); Dr. Parks (Physician); and Dr. Balk (Physician). Service was unable to be effectuated on Defendant Leon Moore (PHS Administrator).

### A. Background

The allegations in Plaintiff's Complaint are as follows.

<u>Plaintiff's Work Injuries and Subsequent Medical Treatment</u>

Plaintiff injured his back and hip on November 26, 2011, while working as a custodial maintenance worker at SCI-Greene and transferring office and custodial supplies from a trailer to a janitorial cart. ECF No. 3, Plaintiff's Comp., at ¶ 18. CO Aberegg noticed that he was in pain and instructed him to sign up for sick call. <u>Id</u>. Approximately three days after the incident, he was evaluated by medical staff and prescribed Motrin 400mg for his pain. <u>Id</u>. He claims that the medicine did not help relieve his pain even though he often took two at a time, three times a day. <u>Id</u>.

While working on December 5, 2011, Plaintiff injured his back, hip, left leg and foot. <u>Id</u>. at ¶ 19. CO Aberegg notified medical and Plaintiff was immediately seen by Dr. Jin. <u>Id</u>. Plaintiff claims that he continued to take the prescribed Motrin throughout December and subsequent months. <u>Id</u>.

Plaintiff informed medical that the Motrin was not helping, so the dosage was increased to 600mg.  Id.  Plaintiff later complained that it still did not help his pain, so he was prescribed Flexirol for eight to ten days.  Id.  Because that did not help his pain either, numerous medications were prescribed thereafter, including Ultram, Naprosyn, Tylenol and Vicodin.  Id. Plaintiff claims that those medications were similarly ineffective at ameliorating his pain.  Id. He allegedly experienced sharp episodes of pain in cyclical patterns that worsened whenever he would sit during the evenings.  Id.

Grievance #395403[1] and Related Medical Care

On December 30, 2011, Plaintiff filed Grievance #395403[2] claiming that his pain had worsened and seeking better medical treatment.  Def. App'x Ex. 1, ECF No. 36-1 at p.2.  His grievance was denied by Tracy Shawley because it was not submitted within 15 working days. Id. at p.3.

Plaintiff received an x-ray in January 2012.  ECF No. 3 at ¶ 20.  Dr. Jin informed him that the x-ray showed bone deterioration and abnormally aligned vertebrae.  Id.  Plaintiff received physical therapy three months later but he claims that he had to request it by sick call slip.  Id.

In late January 2012, Plaintiff met with Dr. Parks and asked for an increase in pain medication, claiming that his pain worsened whenever he sat more than 15-20 minutes at a time. Id. at ¶ 24.  Plaintiff claims that Dr. Parks' response was, "And then you will want more and more."  Id.  Plaintiff also claims that during this meeting he informed Dr. Parks that his pill-line pass was about to expire so Dr. Parks renewed it for the month of February.  Id.

---

[1] The DOC Defendants have submitted copies of the relevant grievances and appeal responses.  ECF No. 36.

[2] In this grievance, Plaintiff stated that his back injury was from childhood.  ECF No. 36-1 at p.2.

On January 30, 2012, Plaintiff sent a Request to Staff Member form to Vihlidal complaining about the statement that Dr. Parks had made to him regarding wanting an increase in his pain medication.  Id.  Plaintiff said that there was no history of drug use or abuse in his 48 years in the DOC.  Id.

On February 3, 2012, Plaintiff submitted a sick call slip to medical but he was told to leave medical when he would not sign a cash slip.  Id.  He claimed that he did not have to sign a cash slip because the condition for which he was seeking treatment was chronic and on-going and he had already signed a cash slip for it once before.  Id.  Later that day, Plaintiff went to pill-line with his renewed pass but Nurse Hilberting took it from him, tore it up, and said, "You're done."  Id.

Grievance #399797 and Related Medical Care

On February 6, 2012, Plaintiff filed Grievance #399797.  Def. App'x Ex. 4, ECF No. 36-4 at pp. 2-3.  He claimed that he was not getting the proper treatment for his pain and that he should not have to sign another cash slip because his medical problems were chronic and ongoing.  Id.  He sought reinstatement of and an increase in his medication and $1,000 for every hour he had to go without it.  Id.  Plaintiff filed an amendment to his grievance on February 15, 2012.  Id. at p.5.  His main complaint was that he was not being prescribed or treated for his bone deterioration, which Dr. Jin had noted in his x-rays.  Id.  He requested to be seen by a chiropractor instead of a physical therapist.  Id.

His grievance was denied by Nurse McAnany on February 22, 2013.  Id. at p.4.  Nurse McAnany stated that Plaintiff was required to sign a cash slip prior to being seen and that his pill-line pass was destroyed because his medications expired on February 3, 2012, and were not

valid until the end of February. Id.[3] He informed Plaintiff that he was scheduled to see Dr. Jin the following week and that Dr. Jin had agreed to put him back on the Naproxen at 500mg and Ultram at 50mg but he could not increase the Ultram dosage because he was already at the maximum dosage. Id. Plaintiff's medications were reinstated the morning of February 8, 2012. Id. at p.6. At this time he was given Vicodin and Robaxin, a muscle relaxer. Id.

Plaintiff appealed the denial of Grievance 399797 in an appeal dated February 27, 2012. Id. In the appeal, Plaintiff complained that his medication made him constipated and that he had requested but not received Metamucil. Id. He also complained that medical was not doing anything to correct his work injuries, choosing instead to treat him with narcotics. Id. He alleged deliberate indifference to his medical needs. Id.

The denial of his grievance was upheld by Superintendent Folino on March 14, 2012. Id. at p.7. On March 17, 2012, Plaintiff filed another amendment to his grievance. Id. at p.9. He complained that medical was continuously misdiagnosing him with arthritic pain when he believed he had sciatic nerve injury. Id. He further complained that medical was not giving him treatment for his bone deterioration and that the pain associated with it was starting to affect his ability to ambulate. Id. He again requested to be seen by a chiropractor instead of a physical therapist. Id. His request was denied by Tracy Shawley on April 13, 2012. Id.

Plaintiff appealed, and on April 5, 2012, Chief Grievance Officer Dorina Varner referred Plaintiff's grievance appeal to the Bureau of Health Care Services. Id. at p.8. On May 4, 2012, Varner denied Plaintiff's final appeal of Grievance #399797, stating that the review by Bureau of

---

[3] In response to Defendants' Motions Plaintiff submitted a Response to a Request that he sent to Deputy Capoza on February 7, 2012. ECF No. 51-1 at 2. In the Request, Plaintiff stated that he was taken off his medications on February 3, 2012, but that he was scheduled to receive Vicodin and Flexirol. He also stated that he had made a verbal request to the physician on February 6, 2012, regarding receiving Metamucil because of the constipation caused by taking narcotics. Therefore, it is assumed that Plaintiff was seen by medical on February 6, 2012.

Health Care Services showed that the medical care with which Plaintiff was being provided was reasonable and appropriate, and there was no evidence of neglect or deliberate indifference to his medical needs. Id. at p.10.

<u>Plaintiff's Housing Conditions and Request for ADA Accommodations</u>

On April 16, 2012, Plaintiff sent a Request to Staff Member to CHCA Vihlidal regarding his housing conditions. ECF No.3 at ¶ 21. He informed her that the conditions of his confinement were counterproductive to his physical therapy because he had to climb stairs because his cell that was on the top tier, the stool in his cell did not have back support and the toilet in his cell did not have support or side-railings. Id.

Plaintiff was seen by his Physical Therapist, John, on April 19, 2012, at which time Plaintiff was told that the location of his problem was in his L5 and S1 vertebrae. Id. PT John advised Plaintiff that he needed to sit up straight to support his back. Id.

On April 16, 2012, Plaintiff submitted a Request to Staff Member to CHCA Vihlidal requesting handicap accommodations. Id. at ¶ 25. Plaintiff alleges that he never received a response to his Request so he forwarded a copy of the Request to CHCA Vihlidal's supervisor, Deputy Capoza, on April 24, 2012. Id. On May 8, 2012, CHCA Vihlidal finally responded informing Plaintiff that he would be placed on Dr. Jin's line to have his physical abilities re-evaluated. Id.

On May 23, 2012, Plaintiff submitted another Request to Staff Member to CHCA Vihlidal. ECF No. 36-2 at p.4. He complained that it had been fifteen day since he received her May 8, 2012 response informing him that he would be placed on Dr. Jin's line to have his physical abilities re-evaluated and he was seeking "information" that would put him in a "mental comfort zone" pending his up-coming evaluation because he was still working in a janitorial

position and was concerned about physical strain that would worsen his condition.  Id.  Plaintiff alleges that his physical abilities were never re-evaluated by Dr. Jin.  ECF No. 3 at ¶ 25.

Plaintiff was seen again by PT John on May 10, 2012.  Id. at ¶ 22.  Prior to adjustment, John informed Plaintiff that Plaintiff's hips did not rotate in sync when bending forward and backward.  Id.

Plaintiff was seen by PT John once more on June 21, 2012.  Id. at ¶ 23.  John had to adjust Plaintiff's hips again to regain proper alignment.  Id.  John told Plaintiff that his L5 vertebrae was unaligned again and he advised Plaintiff for a second time to sit up straight and support his lower back.  Id.  John informed Plaintiff that a back brace was forthcoming.  Id.

Plaintiff's Medical Records and Grievance #410387

Plaintiff submitted a Request to Staff to Nurse Supervisor Rice-Grego on April 23, 2012.  ECF No. 3 at ¶ 25.  He requested access to his medical records so that he could make copies.  Id.  He said that he was entitled to make copies pursuant to the Medical Records Act (Act 26), 42 Pa.C.S. §§ 6151-6161, and pursuant to the memorandum issued to all inmates by Secretary Wetzel on January 10, 2012, which concerned copying charges for medical records.  Id.  Nurse Rice-Grego responded by telling Plaintiff that he could not have copies of his medical file.  Id.

On April 30, 2012, Plaintiff submitted Grievance #410387 with regard to the denial of his request to make copies of his medical records.  ECF No. 36-2 at p.2.  His grievance was denied by CHCA Vihlidal on May 17, 2012.  Id. at p.3.  She stated that the Directive issued by Secretary Wetzel did not apply to inmates and that pursuant to DOC policy the only exception to inmates receiving copies is when an inmate is representing himself in a court case.  Id.

Plaintiff appealed the denial of his grievance.  Id. at pp.6, 8.  He contended that the denial of his request was based on a misinterpretation of his grievance and of the Medical Records Act.

Id. He asked Superintendent Folino to remand the grievance to CHCA Vihlidal so that she could act in accordance with the Act. Id. Folino denied his appeal on June 29, 2012, stating that records are only released pursuant to DC-ADM 003. Id. at p.10. Plaintiff's final appeal to Chief Grievance Officer Varner was dismissed on August 10, 2012, for failing to submit required documentation for proper review. Id. at p.11. However, Plaintiff alleges that Superintendent Folino defaulted because he did not respond to the first level grievance appeal within the time allowed under DOC policy. ECF No. 3 at ¶ 25. Instead, the appeal was denied 22 days after it was submitted. Id.

Grievance #411306

Plaintiff submitted Grievance #411306 on May 7, 2012. ECF No. 35-3 at pp.2-3. He complained that he had sent a Request to CHCA Vihlidal, and also informed her superior, Deputy Capoza that the conditions of his confinement were problematic to his recovery. Id. He complained that he had to walk up and down stairs because his cell was on the top tier, that the toilet in his cell had no support railings and that the desk stool had no back support. Id. He sought to be assigned to a handicap cell per DC-ADM 006 policy, Reasonable Accommodations for Inmates with Disabilities; to be assessed for nerve and bone damage via nMRI and CAT scan, to undergo any invasive or non-invasive procedure deemed necessary; and to meet personally with CHCA Vihlidal. Id. Plaintiff's grievance was denied by Nurse Supervisor McAnany on May 28, 2012. Id. at p.4. Nurse McAnany stated that Dr. Jin believed Plaintiff did not require a handicap cell, an MRI or a CAT scan, and that Plaintiff was currently being provided with physical therapy and medication to improve his symptoms. Id.[4]

---

[4] Prior to the denial of his grievance, Plaintiff allegedly amended his grievance on two occasions, May 14, 2012, and May 17, 2012. ECF No. 3 at ¶ 26. It appears that at least one of his amendments was in regard to not receiving a

Plaintiff appealed the denial of his grievance in an appeal dated June 4, 2012. Id. at p.5. He complained that Nurse McAnany did not do any investigation or research prior to denying his grievance and that he was not impartial or a doctor and therefore his observations should not be relied upon. Id. at p.5. Plaintiff's appeal was denied by Superintendent Folino on July 3, 2012. Id. at p.6. His final appeal was dismissed by Chief Grievance Officer Dorina Varner on August 10, 2012, because Plaintiff failed to provide the required documentation for proper review. Id. at p.7.

Removal from Z-Code/Single Cell Status

Plaintiff, a former capital case inmate, complains that he was improperly removed from his Z-code/single cell status, which he had been on for over twenty years. ECF No. 3 at ¶ 28. He alleges that DOC policy required that an inmate be evaluated by a psychologist prior to the removal of Z-code status and that this did not occur in his case. Id.

He alleges that he filed Grievance #373733 after he discovered this error. The grievance was submitted on July 20, 2011, over two years after his removal from Z-code status. Id. Plaintiff states that his grievance was denied as frivolous by Unit Manager McNair and that McNair threatened him with future disciplinary action in the response. Id.

Although Plaintiff alleges that DOC policy requires that an inmate be evaluated prior to the removal of that inmate's Z-code status, he also alleges that there is no policy or procedure in place for removing Z-code status from former capital case inmates and that staff is not properly trained in the management of Z-code status removal. Id.

---

response from his Request to Staff Member that he wrote to CHCA Vihlidal on April 24, 2012. Plaintiff complains that he followed DC-ADM 006 policy by submitting his request for Inmate Disability Accommodations to the CHCA but that CHCA Vihlidal failed to respond. However, it appears that Plaintiff's request was submitted via a Request to Staff Member form instead of on the Inmate Disability Accommodations Request form, as required by DOC policy.

**B. Standard of Review**

Defendants have filed Motions to Dismiss for Plaintiff's failure to state a clam upon which relief can be granted. In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims

are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210-11; *see also* Malleus, 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler, 578 F.3d at 212; *see also* Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563 n.8.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege

sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002); <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 2102 (10th Cir. 1996).

## C.  Discussion

Pending before the Court are Motions to Dismiss filed by the DOC Defendants (ECF No. 28), Dr. Jin and Dr. Parks (ECF No. 31) and Dr. Balk (ECF No. 29).  The Court has converted, into a Motion for Summary Judgment, that portion of the DOC Defendants' Motion regarding Plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act.[5]  They submitted a Concise Statement of Material Facts related to the exhaustion issue and attached exhibits to support their argument.  The Court notified Plaintiff of the conversion, directed the DOC Defendants to provide Plaintiff copies of all related grievances, and allowed Plaintiff the opportunity to respond to the issue of exhaustion, as well as all other arguments in support of dismissal argued by the Defendants.  The Motions are now ripe for review.

---

[5] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court generally should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." <u>Berry v. Klem</u>, 283 F. App'x 1, 3 (3d Cir. 2008) (quoting <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 (3d Cir. 2004).  A court may also consider indisputably authentic documents.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004).  If other matters are considered by the court, a motion to dismiss should be converted to a motion for summary judgment.  <u>Berry</u>, 283 F. App'x at 3 (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1197 (3d Cir. 1993)); *see also* Fed. R. Civ. P. 12(d).  "Reliance on declarations from prison officials or Corrections Department administrators requires conversion." <u>Berry</u>, 283 F. App'x at 3 (citing <u>Camp v. Brennan</u>, 219 F.3d 279, 280 (3d Cir. 2000)); *see also* <u>Goodson v. Maggi</u>, No. 08-44, 2010 U.S. Dist. LEXIS 26805, 2010 WL 1052963, at *1 (W.D. Pa. Feb. 24, 2010) (Declaration supporting motion to dismiss on ground that plaintiff had not exhausted claim as required by the Prison Litigation Reform Act required conversion).

Because the DOC Defendants submitted the Declaration of Grievance Review Officer Tracy Williams to support their argument that Plaintiff failed to exhaust his administrative remedies, the Court was required to convert their Motion to Dismiss into a Motion for Summary Judgment.

Although unclear, it appears that conversion is not necessary whenever defendants submit only the grievances that a plaintiff references in his complaint but did not attach himself.  *See* <u>Spruill</u>, *supra*, (noting that the defendants attached to their motion to dismiss the grievances and related appeals that the plaintiff had referenced in his complaint, and, although their motion should have been captioned as a motion for judgment on the pleadings, the district court was able to consider the grievances without converting the defendants' motion into a motion for summary judgment.)  However, the Third Circuit Court of Appeals has not clarified this issue and it appears to be causing some confusion among the district courts in this circuit.

Plaintiff asserts ten "Counts" in his Complaint. Quoting the Complaint, they are as follows:

1. Count 1 – Deprivation of medical treatment against Defendants Dr. Jin, Nurse McAnany and Nurse Hilberting.

2. Count 2 – Deliberate indifference to serious medical needs against Defendants Moore, Nurse Hilberting, Dr. Balk, Nurse McAnany, CHCA Vihlidal, Dr. Parks, Chief Grievance Officer Varner, Dr. Jin, Nurse Rice-Grego and Superintendent Folino.

3. Count 3 – Lack of mandatory special needs training demonstrating deliberate indifference to death row syndrome against Defendants Secretary Wetzel, Counselor Balesterie, Unit Manager McNair, Unit Manager Palya, and Superintendent Folino.

4. Count 4 – Neglect to prevent against Defendants Secretary Wetzel, Dr. Parks, Dr. Jin, Dr. Balk, Nurse McAnany, Unit Manager McNair, Nurse Rice-Grego and Superintendent Folino.

5. Count 5 – Access to the court and freedom of information against Defendant Nurse Rice-Grego.

6. Count 6 – Illegal and excessive practice and enforcement of medical narcotics experimentation against Defendants Dr. Jin and Nurse Rice-Grego.

7. Count 7 – Intentional infliction of emotional distress and cruel and unusual punishment against CHCA Vihlidal, Nurse Hilberting, Dr. Parks, Unit Manager McNair, Nurse Rice-Grego, Unit Manager Palya, and Counselor Balesterie.

8. Count 8 – Conspiracy to deprive persons of equal protection against Defendants Chief Grievance Officer Varner, CHCA Vihlidal, Nurse Hilberting, Counselor Balesterie, Unit Manager Palya, Dr. Jin, Unit Manager McNair, and Superintendent Folino.

9. Count 9 – Due process and equal protection against Defendants CHCA Vihlidal, Chief Grievance Officer Varner, Dr. Jin, Dr. Parks, Unit Manager McNair, Secretary Wetzel, Nurse McAnany and Superintendent Folino.

10. Count 10 – Deprivation of constitutional rights and privileges against Defendants CHCA Vihlidal, Nurse Hilberting and Nurse Rice-Grego.

(ECF No. 3.) Because it is somewhat unclear what claims Plaintiff is actually raising, the undersigned has reviewed the allegations in support of the aforementioned "Counts," as well as the Defendants' Briefs in Support of their respective Motions, and construed Plaintiff's

Complaint as asserting the following claims: deliberate indifference to his medical needs, a violation of the Americans with Disabilities Act, improper removal of his Z-code status, conspiracy, a violation of his right to access the courts, medical malpractice, and denial of equal protection. Defendants' Motions and arguments in support of dismissal are addressed *infra*.

## A. Dr. Balk's Motion to Dismiss

As an initial matter, Plaintiff does not contest Dr. Balk's Motion to Dismiss or oppose his dismissal from this action. Therefore, the Court should grant Dr. Balk's Motion and dismiss him accordingly.

## B. Exhaustion of Administrative Remedies

Next, both the DOC and the Medical Defendants move to dismiss Plaintiff's Complaint for his failure to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Despite the fact that the Medical Defendants incorrectly argue that Plaintiff's Complaint should be dismissed because he failed to specifically *allege* in his Complaint that he exhausted his administrative remedies,[6] the undersigned notes that the DOC Defendants have properly argued the exhaustion defense and because the defense is equally applicable to the Medical Defendants under the facts of this case, the Court should consider the failure to exhaust defense even as it relates to the Medical Defendants.

Through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other

---

[6] The exhaustion requirement is an affirmative defense to be pleaded by the defendant. A prisoner/plaintiff need to plead and prove compliance with the exhaustion requirement in his complaint. Jones v. Bock, 549 U.S. 199, 216 (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Therefore, the Medical Defendants are incorrect in arguing that Plaintiff's Complaint should be dismissed because he failed to allege exhaustion in his Complaint.

federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Pursuant to the Inmate Grievance System Procedure, which is set forth in DC-ADM 804,[7] an inmate must first attempt to resolve his or her concerns informally by use of a DC-135, Inmate Request to Staff Member, or direct conversation with the Unit Manager or Officer-in-Charge. If the inmate is unsuccessful at resolving his issue, then he can submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen working days after the events upon which the claims are based. The Grievance Coordinator assigns the grievance to a Grievance Officer who reviews it and then submits a response to the inmate within fifteen working days from the date the grievance was entered. Within fifteen working days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution.[8] The Facility Manager responds to the appeal within fifteen working days. Within fifteen working days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See* Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

In this case, Plaintiff did not exhaust his administrative remedies with respect to Grievances #395403, #410387, and #411306. As noted in Section A of this Report, Grievance

---

[7] *See* Policy Statement DC-ADM 804, Inmate Grievance System, located online at www.cor.state.pa.us.

[8] The policy was last amended on December 1, 2010. The previous version of the policy only allowed ten working days to appeal an adverse initial review decision to the Facility Manager.

#395403 was dismissed for being untimely submitted, and Grievances #410387 and #411306 were both dismissed at the final appeal stage for Plaintiff's failure to submit the required documentation for proper review. Plaintiff clearly did not comply with the procedural requirements of the grievance review process and therefore he did not fully exhaust the issues that he presented in these grievances. As such, Plaintiff's claims related to his medical care in January 2012, his request to photocopy his medical records, and his request for handicapped accommodations are subject to dismissal for Plaintiff's failure to comply with the PLRA's exhaustion requirement.

Plaintiff argues that Defendants have procedurally defaulted their affirmative defense because they did not respond to some of his grievances within the time required under the DOC's policy. This argument is incorrect. State agency guidelines do not, in and of themselves, create a right, and do not have the force of law. *See* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner."). *See also* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation). As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation. Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)). *See also* Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional

violation."); <u>Walker v. Zenk</u>, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part by* 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); <u>Estrella v. Hogsten</u>, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Therefore, a staff member's untimely response to a grievance or appeal does not waive a defendant's right to raise the exhaustion of remedies affirmative defense.

Plaintiff also argues that he did exhaust his administrative remedies because he received a "final disposition" for each of his grievances even though they were dismissed for either being untimely or procedurally defective. Plaintiff is incorrect. The PLRA is clear that an inmate must exhaust all three levels of review and comply with the procedural requirements of the facility in order to fully exhaust an issue. *See* <u>Booth</u>, *supra*. Thus, dismissal is appropriate on this ground for all claims except for those presented in Grievance #399797, which Defendants do not dispute that Plaintiff properly exhausted. In that grievance, Plaintiff complained that he was not getting proper medical treatment for his condition or treated for his bone deterioration. He also complained that Nurse Hilberting wrongfully tore up his pill-line pass and that he had to go without medication from February 3, 2012, to February 8, 2012. The undersigned will construe these allegations as asserting a claim for deliberate indifference to Plaintiff's medical needs and will address the remainder of Plaintiff's claims in the alternative in the event that the Court disagrees with the undersigned's recommendation of dismissal for Plaintiff's failure to exhaust his administrative rememdies.

### C. Personal Involvement

Next, many Defendants argue that they should be dismissed because Plaintiff has failed to show their involvement in any alleged wrongdoing. For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

### 1. Defendants Folino and Varner

Plaintiff has failed to sufficiently allege personal involvement with regard to Defendants Folino and Varner, whose actions were limited to responding to Plaintiff's grievance appeals. The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement necessary for liability in a Section 1983 action. *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist.

LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Therefore, Plaintiff has failed to state a claim against these two DOC Defendants.

2. Defendant Wetzel

Similarly, Secretary Wetzel's only alleged involvement is issuing a memorandum regarding photocopying expenses for medical records. Plaintiff has not alleged that Secretary Wetzel was personally involved in any other respect, and, to the extent he seeks to assert that Secretary Wetzel is automatically liable for the actions of his employees, this is a classic example of *respondeat superior*. Additionally, while a supervisor may be held liable if he or she played an "affirmative part" in the complained-of misconduct, there are no factual allegations in the Complaint that state a claim against Supervisor Wetzel in this capacity. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). *See also* Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001). Therefore, he should be dismissed from this action.

### 3. Defendants McAnany, McNair and Dr. Parks

These Defendants also argue that they should be dismissed for lack of personal involvement. However, Plaintiff's Complaint contains sufficient factual allegations showing personal involvement on their part. Therefore, they should not be dismissed on this ground.

### D. Deliberate Indifference

The DOC and the Medical Defendants move to dismiss Plaintiff's Complaint on the basis that Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs. In order to state such a claim, a plaintiff must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Plaintiff's factual allegations not only reveal a complete lack of deliberate indifference on the part of any individual Defendant, they also demonstrate that the medical staff at SCI-Greene was attentive and responsive to Plaintiff's medical needs. Indeed, his allegations, which are fully

set forth in Section A of this Report, support the conclusion that Plaintiff received extensive medical treatment for his injuries and complaints. He was prescribed numerous pain killers when he alleged that he was in pain, and when he complained that a certain medication did not provide him with relief, his dosage was increased or his medication was switched. He received an x-ray after his injury, which revealed bone deterioration, a common condition that is not reversible, and he later received physical therapy to align his spine and hips. In fact, there is not one instance where Plaintiff was not provided with medical care when it was requested. Plaintiff disagreed with the treatment he received. He wanted an MRI, a CAT scan, surgical procedures, and to see a chiropractor. However, a disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). It is well settled that mere disagreements over medical judgment do not state an Eighth Amendment claim as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted); Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983). Moreover, the Eighth Amendment does not require a prison to provide an inmate "with the most sophisticated care money can buy." United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987).

It is unfortunate that the medication with which Plaintiff was provided did not completely relieve his pain but "[t]he constitution does not . . . guarantee pain-free medical treatment."

White, 897 F.2d at 110. There is simply nothing in Plaintiff's Complaint that would support a claim for deliberate indifference. Therefore, this claim should be dismissed.[9]

### E. ADA

Plaintiff alleges that Defendants violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by not assigning him to a handicap cell, which would accommodate his disabilities and aid in his recovery.

Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; Civic Ass'n of the Deaf v. Giuliani, 915 F. Supp. 622, 634 (S.D.N.Y. 1996). It provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Title II applies to the state prisons, Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209–10 (1998), and authorizes private lawsuits for both money damages and injunctive relief against public entities that violate its provisions. 42 U.S.C. § 12133.

To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to

---

[9] The undersigned is not blind to Plaintiff's allegation that Nurse Hilberting tore up his pill-line pass on February 3, 2012. However, the record demonstrates, and Plaintiff even admits himself (albeit in one of his grievances), that his pass was not valid until the end of February. Even if Plaintiff went five days without his medication, which is what he alleges, although the exhibits suggest otherwise, the lack of medication for this amount of time does not amount to a showing of deliberate indifference. Plaintiff does not allege that he suffered any injury as a result of not receiving his medication during this time. In fact, the record demonstrates that Plaintiff was seen by medical on February 6, 2012, at which time his medication was changed. *See*, *supra*, n.3.

discrimination by any such entity; (4) by reason of his disability. <u>Bowers v. National Collegiate Athletic Ass'n</u>, 475 F.3d 524, 550 (3d Cir. 2007).

Under Title II, the failure of a public entity to provide disabled persons with reasonable modifications constitutes discrimination within the meaning of the Act. *See, e.g.*, <u>Townsend v. Quasim</u>, 328 F.3d 511, 517 (9th Cir. 2003); <u>Muhammad v. Court of Common Pleas of Allegheny County, Pa</u>, Civil No. 2:09–1255, 2011 WL 4368394, 7 (W.D. Pa. Aug. 25, 2011). *See also* 28 C.F.R. § 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

As an initial matter, the individual defendants, sued in their individual capacities, are not liable under Title II of the ADA because they are not "public entities" within the meaning of the ADA. *See* <u>Emerson v. Thiel College</u>, 296 F.3d 184, 189 (3d Cir. 2002). Accordingly, Plaintiff is unable to state a claim against the Defendants in their individual capacities under this act.

To the extent Plaintiff is suing the individual Defendants in their official capacities, the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that actually violates the Constitution. <u>United States v. Georgia</u>, 546 U.S. 151, 159 (2006). However, in order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless invalid." <u>Bowers v. NCAA</u>, 475 F.3d 524, 553 (3d Cir. 2007). Pursuant to this

standard, Plaintiff must initially state a valid claim under Title II of the ADA. Id. at n.32. *See also* Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995).

Assuming Plaintiff is a qualified individual with a disability, although he has alleged no facts to suggest that he is, he does not state a claim under the ADA because his claim is based upon his disagreement with Dr. Jin's medical determination that he did not require a handicap cell. *See*, *e.g.*, Isley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); Lesley v. Chie, 250 F.3d 47, 55 (1st Cir. 2001) ("[A] plaintiff's showing of medical unreasonableness must be framed within some larger theory of disability discrimination."); Thomas v. Pa. Dep't of Corr., 615 F. Supp. 2d 411, 429 (W.D. Pa. 2009) (plaintiff's requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA). This is insufficient to state a claim under the ADA and therefore Plaintiff has failed to state a claim against any named Defendant for a violation of Title II of the ADA.

**F. Z-Code Status**

Plaintiff alleges that his Z-code status was improperly removed because he was not evaluated by a psychologist prior to its removal, which was DOC protocol. He also alleges that Defendants did not have "special needs training," which was necessary for the management of former death row inmates like himself who have spent more than a decade in a single cell on mandatory Z-code. He claims that this lack of training and the failure to have him evaluated by a psychologist as a prerequisite to his removal amounted to deliberate indifference. Defendants argue that any alleged claims stemming from the removal of his Z-code status are time-barred.

While 42 U.S.C. § 1983 does not contain a statute of limitations period, "federal courts must look to the statute of limitations governing analogous state causes of action." Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457 n.9 (3d Cir. 1996). Furthermore, "[a] section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted).

The statute of limitations on Plaintiff's claims is two years. See 42 Pa. C.S.A. § 5524. Plaintiff had his Z-code status removed on February 20, 2009, and he did not file his Complaint in this case until May of 2013. Plaintiff argues that his claims are not time-barred because it was not until October 10, 2011, when he discovered that a psychological evaluation was standard protocol prior to removal of a death row inmate's Z-code status.

Plaintiff's argument is unpersuasive, and, in any event, he does not point to any requirement that a psychological evaluation is a mandatory prerequisite prior to an inmate's removal of Z-code status. Moreover, it is not constitutionally required that a former death row inmate be psychologically evaluated before his or her Z-code status can be removed or that employees undergo special training for managing death row inmates' Z-code removal. Therefore, even if these claims were not time-barred, Plaintiff's claims stemming from his Z-code removal would be subject to dismissal for failure to state a claim.

## G. Conspiracy

Plaintiff alleges that Defendants engaged in a "conspiracy to deprive persons of equal protection of the laws." The undersigned assumes that Plaintiff is asserting a conspiracy claim under 42 U.S.C. § 1985. Under Section 1985, a party can bring an action to recover injuries incurred by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any

person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To establish a claim for civil conspiracy, a plaintiff must allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property of the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

It appears that Plaintiff claims something along the lines that Defendants engaged in a conspiracy by agreeing to delegate their professional responsibilities to other individuals, who were subordinate, or had no knowledge of the issue, when responding to Plaintiff's Requests to Staff Members. Other than Plaintiff's conclusory allegation that such a conspiracy existed, the Complaint contains no factual allegations to support a finding of a conspiracy, or that any such conspirator acted with the requisite purpose of invidious class-based discrimination. Therefore, Plaintiff's conspiracy claim is subject to dismissal for failure to state a claim.

## H. Access to Court

Plaintiff claims that he was denied access to the courts because he was wrongfully denied his right to photocopy his medical records, which he states he was entitled to under the Medical Records Act, and the memorandum issued by Secretary Wetzel on January 10, 2012. He claims that he could have submitted his medical records to support the claims in his Complaint.

First of all, the memorandum issued by Secretary Wetzel referred to fees imposed for the copying of medical records in accordance with the Medical Records Act; it did not, however, *give* prisoners the unfettered right to copy their medical records. The Pa DOC has a procedure in place for inmates to request production of their own medical records. In accordance with DC-

ADM 003, Release of Information, the DOC's procedure provides a method by which the inmate is given a reasonable amount of time to examine and inspect the requested documents.[10]  As part of this procedure, the inmate must initiate this process by submitting an Inmate Request to the appropriate staff member based upon the type of information being requested.  If the request is granted, the inmate may then review the documents and obtain copies at his expense; however, charges for photocopies are made in accordance with the DOC's policies and procedures.

Importantly, an inmate's medical records are the property of the DOC and an inmate's request and authorization for their release does not require the DOC to release them.  This is expressly stated on the DC-108, Authorization for Release of Information.

Nevertheless, Plaintiff's claim is that he was denied his right to access the court because he was denied copies of his medical records, which he claims he would have submitted along with his Complaint to support his allegations.  In order to establish a violation of the constitutional right of access to the courts a prisoner must show proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  *See* Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997).

Here, there are no factual allegations that the failure to copy his medical records and submit them in support of his Complaint affected his ability to pursue a non-frivolous or meritorious claim in this case.  As previously noted, most of Plaintiff's claims are subject to dismissal because he failed to exhaust his administrative remedies.  Additionally, Plaintiff has failed to state a deliberate indifference to medical needs claim because he repeatedly acknowledges that he was provided with medical care for his complaints.  Plaintiff simply disagrees with the type of care that he was provided.  This does not state a claim for relief and

---

[10] *See* Policy Statement, DC-ADM 003, Release of Information located at www.cor.state.pa.us.

Plaintiff's medical records would have only served to support this conclusion. Therefore, Plaintiff's access to courts claim is subject to dismissal for failure to state a claim.

## I. Medical Malpractice

The Medical Defendants move to dismiss Plaintiff's medical malpractice claim, to the extent that he raises one in his Complaint. They argue that he has failed to file a Certificate of Merit, as required under Pennsylvania law, and therefore his professional liability claim against them should be dismissed. Although Plaintiff responded that he was not raising a medical malpractice claim, his response was somewhat unclear and elusive. Thus, the undersigned will address Defendants' argument.

Pennsylvania law requires that a Certificate of Merit ("COM") accompany a claim for professional liability brought against certain designated licensed professionals.[11] This requirement is provided for in Pennsylvania Rule of Civil Procedure 1042.3, which states that the COM must be filed within sixty days following any action where it is alleged that "a licensed professional deviated from the acceptable professional standard." Pa. R. Civ. P. 1042.3. The COM must contain a written statement from "an appropriate licensed professional" declaring whether the professional liability claim is brought directly (the defendant's conduct fell below the standard of care, bringing about the harm), indirectly (the conduct of persons under the direction of the defendant fell below the standard of care, bringing about the harm), or that no expert testimony will be necessary to prosecute the claim against that defendant. Pa. R. Civ. P. 1042.3 (a)(1)-(3). It must also be signed by the party or by the attorney representing that party. Pa. R. Civ. P. 1042.3(a).

---

[11] "License professional" includes health care providers, accountants, architects, chiropractors, dentists, engineers or land surveyors, nurses, optometrists, pharmacists, physical therapists, psychologists, veterinarians and lawyers. Pa R. Civ. P. 1042.1(b).

Plaintiff has neither filed a COM nor requested an extension of time to do so. Nevertheless, there is absolutely nothing in the Complaint which would support a medical negligence cause of action. Specifically, in order prevail on a medical malpractice/negligence claim under Pennsylvania law, a plaintiff has the burden of establishing each of the following elements: (1) that there was a duty owed by the physician; (2) that there was a breach of that duty; (3) that the breach proximately caused the harm experienced by the plaintiff; and (4) that the plaintiff's damages directly resulted from the harm. *See* Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070 (Pa. 2006) (quoting Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997)); Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990). As seen in Section A of this Report, Plaintiff was given constant and appropriate medical treatment. Moreover, Plaintiff does not allege that he experienced any harm or suffered any damages as a result of any direct action by the individual Medical Defendants. This claim should therefore be dismissed.

**J. Fourteenth Amendment**

Plaintiff asserts that Defendants have violated his rights under the Fourteenth Amendment based on the deliberate indifference that Defendants allegedly demonstrated toward his medical needs. However, Plaintiff's Fourteenth Amendment claims are foreclosed pursuant to the "explicit textual source" rule as stated in Albright v. Oliver, 510 U.S. 266 (1994). In Albright, the Supreme Court quoted Graham v. Connor, 490 U.S. 386, 395 (1989), and stated that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright, 510 U.S. at 273 (internal quotations omitted).

In *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010), the Third Circuit Court of Appeals applied the more-specific-provision rule (a.k.a. the explicit textual source rule) in a case where the plaintiff, a juvenile adjudicated delinquent and committed to the custody of Pennsylvania's Department of Welfare's Bureau of Juvenile Justice Services, brought both substantive due process and Eighth Amendment claims challenging the same conduct concerning conditions of his confinement and an alleged failure by Defendants to ensure his safety. The court held that "[b]ecause these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Bett's substantive due process claims." Id. at 261.

Here, Plaintiff's Fourteenth Amendment claims are duplicative of his Eighth Amendment claims. The claims both concern Plaintiff's assertion that he was denied medical care to which he believed he was entitled. His claims are clearly governed by the Eighth Amendment and he has not demonstrated an independent basis for a Fourteenth Amendment substantive due process claim. As such, these claims are foreclosed in accordance with Albright and Betts.

**K. Equal Protection**

Plaintiff alleges that he was treated differently than similarly situated prisoners with no rational basis for the disparate treatment. He claims that other prisoners with less serious disabilities were provided with single cells.

The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living

Ctr., Inc., 473 U.S. 432, 439 (1985)).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause."  Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir. 1994).  Additionally, an equal protection violation in a prison setting requires proof that an inmate "was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [The inmate] also must show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotation marks omitted); see also Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985).

Plaintiff provides no factual allegations to support his claim.  He fails to identify any specific inmate whose disabilities were similar or less severe and who received a handicap cell.  Therefore, he has failed to state an equal protection claim.

## L.  Defendant Moore

It is also recommended that Defendant Leon Moore be dismissed from this action for Plaintiff's failure to effectuate service upon them in compliance with Federal Rule of Civil Procedure 4(m).  Additionally, the undersigned notes that service on this Defendant would be futile.  Plaintiff's allegations against Defendant Moore are sparse and relate solely to the claim that the Defendants were deliberately indifferent to his medical needs.  As explained in this Report, Plaintiff has failed to state a claim in this regard, to the extent that he even exhausted his administrative remedies with respect to any such allegations.

## M. Amendment of the Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless

doing so would be "inequitable or futile." <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007); *see also* <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

The undersigned is cognizant of these holdings but finds that allowing for amendment by Plaintiff would be futile, even if he were able to possibly state a claim if given the opportunity to amend. Plaintiff has failed to exhaust the majority of his claims and he is procedurally barred from doing so now. Furthermore, it is clear that the crux of Plaintiff's Complaint is that he is not getting the medical treatment he desires or a handicap cell that he thinks he is entitled to. However, his allegations belie his deliberate indifference claims. Plaintiff admits that he is getting medical care for his conditions and the record demonstrates that Dr. Jin at SCI-Greene does not believe that Plaintiff's conditions warrant a handicap cell. It is the law that courts will not second-guess the propriety or adequacy of a particular course of treatment if it is a question of sound professional judgment. <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979). In this case, the undersigned believes that allowing for amendment by Plaintiff would be futile.

## III. <u>CONCLUSION</u>

For the aforementioned reasons, it is respectfully recommended that the Court grant the pending Motions to Dismiss filed at ECF Nos. 28, 31 and 39. Although unnecessary if Defendants' Motions to Dismiss are granted, it is further recommended that the Court grant Plaintiff's Motion for Transcripts filed at ECF No. 60, and allow Plaintiff to obtain a transcript of the hearing held before the undersigned on November 18, 2013. However, Plaintiff should be required to pay for the cost of the transcript in accordance with the fees of this Court.

Dated:  January 30, 2014.

/s/ Lisa Pupo Lenihan

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  William Basemore
AS-0426
SCI Greene
175 Progress Drive
Waynesburg, PA  15370
Via First Class Mail

Counsel of Record
Via ECF Electronic Mail